THE PEOPLE OF THE STATE OF NEW YORK ex rel. PARK ROW REALTY COMPANY, Relator, *v.* MARTIN SAXE and Others, as STATE TAX COMMISSIONERS, and the STATE TAX COMMISSION OF THE STATE OF NEW YORK, Defendants.

Third Department, November 14, 1917.

**Tax — when prior mortgage should not be deducted from value of real estate in fixing tax on mortgage given to secure unlimited future advances.**

In ascertaining the value of real estate in fixing the mortgage tax under sections 253 and 256 of the Tax Law, on a mortgage given to secure unlimited future advances, a prior mortgage should not be deducted, where the statement provided by section 256 of the Tax Law showing the limit of the advances has not been filed.

The absence of such statement indicates that the amount to be advanced was not limited to the then value of the equity of redemption.

Such tax is not upon the real estate, but upon the debt or obligation secured by the mortgage. If the mortgage fails to show the amount of the debt or obligation secured, the value of the mortgaged property is made the measure for computing the tax.

WOODWARD and SEWELL, JJ., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 17th day of May, 1916, directed to Martin Saxe and others, as State Tax Commissioners, and the State Tax Commission, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in determining the value of certain property of the relator for the purposes of a mortgage tax.

The determination of the Tax Commission made on April 20, 1916, and under review refused to deduct the amount of the prior mortgage from the value of the real estate in fixing the mortgage tax under sections 253 and 256 of the Tax Law on a mortgage given to secure future advances and unlimited as to amount.

*Charles Stewart Davison* [*George W. Phillips, Jr.,* of counsel], for the relator.

*Merton E. Lewis, Attorney-General* [*James S. Y. Ivins, Deputy Attorney-General,* of counsel], for the defendants.

KELLOGG, P. J.:

If it had been the intention of the parties to limit the advances to the value of the equity of redemption, they would have filed the statement provided by section 256 of the Tax Law showing such limit. The absence of such statement indicates that the amount to be advanced was not limited to the then value of the equity of redemption.

This mortgage was apparently made to cover the uncertainties of the future and with the idea that financial difficulties might arise, and to protect the parties against all possibilities. It was not apparent when the stringency and trouble in the financial world then threatening might strike, or when the advances under the mortgage would begin or end. It was quite possible that the prior mortgage might be paid before any advances were made upon this mortgage, or during the time that advances were being made. Evidently this mortgage was intended as a continuing security for advances which might be made from time to time during its existence.

The tax is not upon the real estate but upon the debt or obligation secured by the mortgage. (§§ 253, 256.) If the mortgage fails to show the amount of the debt or obligation secured, the value of the mortgaged property is made the measure for computing the tax.

I think that within section 256 of the Tax Law the prior mortgage is not to be deducted in assessing the value of this mortgage. The property secured by the mortgage was the Park Row Building and No. 3 Park Row, worth $3,660,000, owned by the mortgagor. The judgment and pleasure of the mortgagees, from time to time, was the only limit contemplated by the mortgage on the amount which might be advanced upon and secured by it. Undoubtedly in making the advances, they would from time to time be interested in knowing whether the first mortgage remained a lien upon the property. If the first mortgage was discharged they would undoubtedly consider the land as a security for a much larger sum than the value of the equity of redemption at the time the mortgage was made.

I favor an affirmance.

All concurred, except WOODWARD, J., who dissented, with opinion, in which SEWELL, J., concurred.

WOODWARD, J. (dissenting):

On the 16th day of February, 1916, the Park Row Realty Company made application to the State Board of Tax Commissioners to review the basis of an appraisement made by the register of the city and county of New York in connection with two instruments, in the form of deeds but intended to operate as mortgages, which instruments were recorded on the 17th day of January, 1908. There is no dispute that, at the time these mortgages were recorded, there was an underlying mortgage of $2,500,000 upon the premises covered by these instruments, and the only question presented by the writ of certiorari is whether this sum should have been deducted from the estimated value of the premises in fixing the mortgage tax. The register refused to deduct this amount, and the Park Row Realty Company, after a considerable delay, seeks to have this corrected. The State Board of Tax Commissioners, acting upon the advice of the learned Attorney-General, has refused relief, and the matter is brought here by the writ.

Section 253 of the Tax Law provides that " a tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be, secured at the date of the execution thereof or at any time thereafter by mortgage on real property situated within the State recorded on or after the first day of July, nineteen hundred and six, is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article." (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], § 253.)* Obviously, the legislative purpose is to levy and collect a tax on the amount secured by the mortgage; primarily it is the debt which is to measure the amount of the tax. This is made the more certain by the provisions of section 255,* exempting supplemental mortgages to secure the original indebtedness, even where new property is made subject to the obligation, and careful pro-

* Since amd. by Laws of 1916, chap. 323. When the instruments were recorded the former Tax Law was in force. (See Gen. Laws, chap. 24 [Laws of 1896, chap. 908], § 293, added as § 294 by Laws of 1905, chap. 729, as renum. and amd. by Laws of 1906, chap. 532, and Laws of 1907, chap. 340; Id. § 293b, as added by Laws of 1907, chap. 340.)— [REP.

106    People ex rel. Park Row Realty Co. *v.* Saxe.

Third Department, November, 1917.        [Vol. 180.

vision is made that if the supplemental mortgage secures new indebtedness the tax shall be levied upon such new indebtedness. The statute is, of course, to be construed in the light of this underlying intent, and section 256 of the Tax Law, under which the present controversy arises, is clearly designed to approximate this result as nearly as practicable.

Section 256 of the Tax Law* provides that "If the principal indebtedness secured or which by any contingency may be secured by a mortgage is not determinable from the terms of the mortgage, or if the mortgage is given to secure the performance by the mortgagor or any other person of a contract obligation other than the payment of a specific sum of money and the maximum amount secured or which by any contingency may be secured by the mortgage is not expressed therein, such mortgage shall be taxable under section two ·hundred and fifty-three of this chapter upon the value of the property covered by the mortgage, which shall be determined by the recording officer to whom such mortgage is presented for record, unless at the time of presenting such mortgage for record the owner thereof shall file with the recording officer a sworn statement of the maximum amount secured or which under any contingency may be secured by the mortgage. If such maximum amount is expressed in the mortgage or in a sworn statement filed as required by this section, such amount, shall be the basis for assessing the tax imposed by this article." Here we have the same underlying thought; it is the amount which the mortgage, under any contingency, is intended to cover which is to form the basis of the assessment, and the better to secure this purpose it is provided in the same section that "a statement filed by the owner of a mortgage pursuant to this section shall thereafter at all times be binding upon and conclusive against such owner, the holders of any bonds or obligations secured by such mortgage and all persons claiming through the mortgagee any interest in the mortgage or the mortgaged premises." That is, the security could never be

---

* See, also, Laws of 1913, chap. 665. Since amd. by Laws of 1916, chap. 323. When the instruments were recorded the former Tax Law was in force. (See Gen. Laws, chap. 24 [Laws of 1896, chap. 908], § 293, as added by Laws of 1907, chap. 340.) — [Rep.

enlarged beyond the amount which was stated by the owner as the sum to be secured, and on which a tax had been paid at the time of recording.

Having thus carefully provided for carrying out the purpose of the act and securing a tax upon the actual amount secured, or, where this was left uncertain, by taking the " value of the property covered by the mortgage " as the basis for such tax, the statute further provides, and its language is significant of the intent of the act, that " if the maximum amount secured or which by any contingency may be secured by the mortgage is not expressed in the mortgage or in a sworn statement as authorized by this section, the recording officer at the time such mortgage is offered for record may require the mortgagor or mortgagee to furnish him with proofs as to such facts as he deems necessary for the purpose of *computing the value of the property covered by the mortgage* and such proofs shall be preserved in his office," the purpose being that " his determination as to the basis for *computing* the tax on such mortgage shall be subject to review by the State Board of Tax Commissioners." (See, also, Laws of 1913, chap. 665, amdg. said § 256.)* The recording officer is not to estimate the value of the real estate involved in the mortgage; he is to determine the " value of the property covered by the mortgage," which is assumed to be the equivalent of the " principal indebtedness secured or which by any contingency may be secured by a mortgage," and he is given power to " require the mortgagor or mortgagee to furnish him with proofs as to such facts as he deems necessary for the purpose of computing the value of the property covered by the mortgage," and to compute is " to determine by calculation; to reckon; to count." (Webster.)

Clearly the Legislature must have used the word " compute " intelligently; the taxing officer was to have power to require proofs as to the facts " for the purpose of computing the value of the property covered by the mortgage," and there would be no basis for computation if the entire value of the property described in the mortgage was to be considered; that would involve merely an estimate of the value of the lands and

---

* Since amd. by Laws of 1916, chap. 323. — [REP.

108    People ex rel. Park Row Realty Co. *v.* Saxe.

Third Department, November, 1917.    [Vol. 180.

buildings involved, and would be entirely lacking in that degree of accuracy which is necessarily involved in the word " compute." A mortgage for an indefinite amount might involve merely a few thousand dollars, while the value of the property might be up among the millions, and it was never the intention of the Legislature to impose a tax of fifty cents per hundred on the value of the property described in the mortgage, but upon the amount of the obligation, and it was assumed that where the parties failed to disclose the exact amount involved it would be within the limit of the value of the property which was pledged as security for the performance of the obligation. It was this value which was to be computed; it was the value of the property " covered by the mortgage " and available for the payment of the obligation in the event of default. So much of the property as was already pledged by mortgage or otherwise to the payment of other obligations, or as might be involved in a life estate, or an estate for years, constituted no part of the value dedicated to the payment of obligations secured by a subsequent mortgage, which was the arbitrary basis fixed by the statute where no other fixed foundation was provided for computing the amount of tax to be paid upon the recording of such subsequent mortgage.

The suggestion that the subsequent payment of the underlying mortgage would change the situation, or that it might open the way for fraud, does not appeal to us. The statute makes the tax to depend upon the situation as it exists upon the day and at the hour when the instrument is offered for recording. (§ 256.) At that time the amount of the tax is fixed, and the amount secured cannot be changed after that date without the payment of an additional tax, so that what becomes of the underlying mortgage is of no importance. The value of the property covered by the second or subsequent mortgage is the value of the property which remains after the prior obligations are discharged for the purposes of fixing the basis for computing the mortgage tax, and the register and the State Tax Commission erred in disregarding the prior incumbrance of $2,500,000, which concededly existed at the time the instruments here under discussion were offered for record; it afforded no reasonable basis for arriving at the actual

amount of the obligation secured, and this was the only purpose of the Legislature in fixing this arbitrary standard of taxation in the circumstances described in the statute.

It should be remembered, in this particular case, that the property was deeded to Nathaniel Mayer Rothschild and others subject to the underlying mortgage of $2,500,000. It is true that it is conceded that these deeds were intended as mortgages, but they were in form deeds of the property subject to an underlying mortgage, and the value of the property thus deeded was the value of the property less the amount of the liens standing against it. The holders of the deeds took title in law to the premises, subject to the payment of this underlying mortgage of $2,500,000. On the face of the record nothing passed to Nathaniel Mayer Rothschild and others except the equity in the property covered by the deeds, and it is not to be presumed that the Park Row Realty Company would be interested in paying off the underlying mortgage while the legal title vested in a third person. It is entirely immaterial that as between the parties these deeds were understood to be mortgages; on the fact of the transaction Nathaniel Mayer Rothschild and others had purchased the premises while there was an outstanding mortgage for a sum of money upon which, presumptively, a mortgage tax had already been paid, and when it devolved upon the register to compute the value of the property covered by these deeds he could not close his eyes to the fact that the deeds did not cover $2,500,000 of the value involved in the premises. That much had already been disposed of when the deeds were made; the Park Row Realty Company had no power to dispose of the premises free from the obligation of $2,500,000 without the discharge of that indebtedness, and Nathaniel Mayer Rothschild and others took it subject to that charge. So long as the legal title was vested in Nathaniel Mayer Rothschild and others the Park Row Realty Company would hardly be making use of its resources to pay that obligation, when it could just as easily use them to reduce the amount to be paid under the deeds to redeem the premises. It would not commonly be good business policy to pay a mortgage upon premises, the legal title of which was in third persons. This would in no wise tend to increase the apparent solvency of the Park Row

Realty Company, though it might add measurably to the nominal assets of the persons holding the legal title, and it would clearly be the duty of the board of directors of the Park Row Realty Company to use its money to restore its title to the premises, rather than to use its resources to increase the value of the premises held by Nathaniel Mayer Rothschild and others.

We have seen that in this case the deeds are subject to an underlying mortgage, and section 256 of the Tax Law merely requires that where the amount secured is not shown in the manner provided by law, " such mortgage shall be taxable under section two hundred and fifty-three of this chapter upon the value of the property covered by the mortgage," which fact is to be determined by the recording officer who is empowered " at the time such mortgage is offered for record " to " require the mortgagor or mortgagee to furnish him with proofs as to such facts as he deems necessary for the purpose of computing the value of the property covered by the mortgage." To make sure that there is no arbitrary exercise of this power it is further provided, in the same section, that these proofs shall be preserved in the office of the recording officer, and that " his determination as to the basis for computing the tax on such mortgage shall be subject to review by the State Board of Tax Commissioners." There is no sense in using the word " compute " if the entire value of the property embraced in the mortgage is to be determined; we do not compute the value of a city block; we fix its value by its relation to other properties, its size, location, availability, and other elements of greater or less certainty, but when we compute we proceed from known facts; we calculate, we reckon, we count. This is what the recording officer is empowered to do; he is to learn the facts either from the mortgagor or the mortgagee, and from such facts he is to compute the value of the property covered by the mortgage, and here, by the express terms of the instruments offered for record, the facts appear that the legal title to the premises passes subject to an incumbrance of $2,500,000; the deeds cover the premises, subject to a lien of this amount, and that is all there is any right to collect the tax upon which is provided in section 253.

Of course, a mortgage is merely a deed subject to defeasance, though it might be that a second mortgage would not, by its express terms, be given subject to a prior mortgage. We have not this question here; the instruments offered were deeds, expressly subject to the mortgage, and did not in terms assume to convey anything more than the value of the premises over and above the sum of $2,500,000.

The determination of the State Board of Tax Commissioners should be reversed, and the petition of the relator granted, with costs.

SEWELL, J., concurred.

Determination confirmed, with fifty dollars costs and disbursements.